Postal Telegraph Co. *v.* J. L. Criscoe.

[64 South. 933.]

Telegraphs and Telephones. *Delay in delivering. Damages.*

A failure to deliver. a telegram which if delivered would not have constituted a contract, will not entitle the sendee to damages for failing to make such contract.

Appeal from the circuit court of Hinds county.

Hon. W. A. Henry, Judge.

Suit by J. L. Criscoe against the Postal Telegraph Company. From a judgment for plaintiff, defendant appeals.

Appellee was endeavoring to secure families of laborers for A. E. Jennings and E. J. Marley, for tenants on their plantations. Jennings and Marley had agreed to pay appellee twenty-five dollars for each family of laborers secured. The agreement was made first by personal interview, and thereafter appellee went to Vicksburg for the purpose of getting the families. On May 5, 1912, he telegraphed Marley from Vicksburg, Mississippi, to Sumner, Mississippi, via Postal Telegraph, as follows: ''I can give you as many as six first-class families. If you need all or part, wire me at once. Other parties will take them. I give you preference. No singles or hoboes. Send message *via* Postal. If you tele-

phone, call Cumberland office, at eight fifty a. m.'' There
was a notation on the face of the message: ''Care of
Mrs. Neal, China street. Will call.'' Mr. Marley sent
the following reply, *via* Postal Telegraph Company,
from Sumner, Mississippi, addressed to appellee at
Vicksburg, Mississippi, which was received at Vicksburg
at ten thirty-seven a. m., May 6, 1912: ''Call me over
phone. Can use four families.''

On May 5, 1912, appellee sent a telegram to Mr. Jen-
nings, from Vicksburg, Mississippi, to Greenwood, Mis-
sissippi, *via* Postal Telegraph Company, as follows: ''I
failed to see your brother Jackson. If you want the five
families, place transportation here *via* A. V. for forty-
party ticket. You pay for farming families only. No
hoboes will appear. You pay no money except trans-
portation until you get them. Wire me, *via Postal,* at
once.'' Notation at the bottom: ''Will call for answer.''
In response to this telegram, Mr. Jennings wired appel-
lee at Vicksburg, the message being received ten twenty-
four a. m., May 6, 1912, as follows: ''Griffith president
bank pay ticket six families, Pay you twenty-five dollars
family on delivery.''

On the trial appellee testified that he called four times
during the day on May 6th, and was informed each time
that no telegrams had come for him. The messages were
not delivered until about six p. m. May 7th, when a mes-
senger boy located appellee in a hotel. In the meantime,
however, the families had become dissatisfied, and had
gone with another labor agent. Appellee bases his suit
upon the failure of appellant to deliver these answers,
claiming that his messages and the replies thereto con-
stituted a contract between him and Messrs. Marley and
Jennings, and because of the negligence of the telegraph
company he has been damaged to the extent of twenty-
five dollars per family for each family which he would
have delivered, had the messages been received in time,
and asks also punitive damages. The contention of the

telegraph company is that there is no completed contract between appellee and Messrs. Marley and Jennings, and requested a peremptory instruction, which was refused.

The case went to a jury, and verdict was returned for plaintiff for two hundred dollars, from which the telegraph company appeals.

*Flowers, Alexander & Brown,* for appellant.

It was error to allow the jury to assess damages against the defendant on account of the alleged failure to contract with Jennings and Marley for the reason that the contract was incomplete and there was no way by which it could be shown that if the messages had actually been delivered the contract would have been completed. Something else had to be done after the receipt of these messages before the deal could be closed, and it is but a matter of conjecture as to whether this would or would not have been done. And before compensatory damages can be awarded there must be actual loss, and the court must be able to see that such loss comes directly from the wrongful act of the defendant. *Johnson* v. *Western Union Tel. Co.,* 79 Miss. 58; *Western Union Tel. Co.* v. *Adams Machine Co.,* 92 Miss. 49; *Western Union Tel. Co.* v. *Webb & Smith,* 48 So. (Miss.) 408; *Western Union Tel. Co.* v. *Patty Dry Goods Co.,* 96 Miss. 781; *Beatty Lumber Co.* v. *Western Union Tel. Co.,* 44 S. E. (W. Va.) 308; *Smith* v. *Western Union Tel. Co.,* 83 Ky. 104; *Harmon* v. *Western Union Tel. Co.,* 43 S. E. 959; *Bennett* v. *Western Union Tel. Co.,* 106 N. W. (Ia.) 13; *Richmond Hosiery Mills* v. *Telegraph Co.,* 123 Ga. 216; *Bass* v. *Postal Tel. Co.,* 127 Ga. 423; *Postal Tel. Co.* v. *Louisville Cott. Oil Co.,* 140 Ky. 506; *Fisher* v. *Western Union Tel. Co.,* 119 Wis. 146; *Cherokee Tanning Extract Co.* v. *West. Union Tel. Co.,* 143 N. C. 376.

*J. W. Cassedy* and *George Butler,* for appellee.

The testimony in this case shows beyond all doubt, and the jury has settled the question, that there was a con-

tract between Criscoe and Jennings and Marley, whereby Criscoe was to procure these laborers and to be paid therefor at the rate of twenty-five dollars per family.

Criscoe testifies unequivocally that there was such a contract with both Jennings and Marley and his statements relating thereto has been fully set out. He says the agreement was that he was to go to Vicksburg and see the number of families that he could get together and they were to pay him twenty-five dollars per family for the number they desired. Not only is this true, but the telegram to Marley shows on its face that there was such a contract because it says: ''I can give you as many as six first-class families.''

And the telegram to Jennings says: ''If you want the five families place transportation here *via* A. & V. for forty party ticket.'' How it can be logically argued in the face of Criscoe's testimony and in the face of the night lettergrams to Jennings and Marley that there was no contract between these parties we are unable to see.

Criscoe did not know perhaps the number or the character of the families that he could get together until he arrived at Vicksburg, but there was a definite and fixed agreement that he was to receive twenty-five dollars for each family that he could get together that Marley and Jennings accepted. He did get together ten families acceptable to Jennings and Marley and they did agree to accept ten families.

Counsel for appellant in their brief leave out of view all negotiations between Criscoe and Jennings and Marley prior to the time of the sending of the night lettergrams and for this reason alone the contention that there was no complete contract is falacious.

In determining whether or not there was a contract between the parties it was necessary not only to look to the telegrams exchanged between them but to the prior negotiations and to the telegrams. It is undisputably shown that there was a contract between Criscoe and

Jennings and Marley for the number of families to be procured by Criscoe· at Vicksburg. Consequently we seriously insist that there was a contract between these parties and the principles contended for by counsel in their brief have no application to the case at bar.

If the telegrams are considered without reference to any previous negotiations it is possibly true that a completed contract is not shown, but the telegrams on their face import that there had been previous negotiations, because in neither telegram from Criscoe is there anything said of the price to be paid and in the one to Marley there is nothing said about the transportation charges. In other words, it is too clear for argument that the telegrams taken in connection with the prior negotiations completed the contract and it is not necessary to further discuss this question.

Smith, C. J., delivered the opinion of the court.

Had the telegrams from Marley and Jennings been delivered to appellee, no contracts would have been thereby completed. Consequently the case falls within the rule announced in *Johnson* v. *Telegraph Co.,* 79 Miss. 58, 29 So. 787, 89 Am. St. Rep. 584, and applied in *Telegraph Co.* v. *Adams Machine Co.,* 92 Miss. 849, 47 So. 412, *Telegraph Co.* v. *Patty Dry Goods Co.,* 96 Miss. 781, 51 So. 913, and *Telegraph Co.* v. *Crook & Company,* 63 So. 350. The court, therefore, erred in refusing defendant's instructions numbers 4 and 5.

*Reversad and remanded.*

Cook, J. (dissenting).

Appellee, plaintiff below, made an arrangement with Mr. Marley, of Sumner, and Mr. Jennings, of Greenwood, both planters in the Delta, to go to Vicksburg and there endeavor to secure laborers for these planters. I agree with my associates that the Marley transaction may be eliminated, for the reasons stated in the opinion.

I believe, however, that the telegram to Jennings and Jennings' answer thereto constitute a completed contract, and the failure of the telegraph company to deliver Jennings' reply made it liable in damages to Criscoe. Mr. Criscoe made an agreement with Mr. Jennings to go to Vicksburg and see what he could do, and then notify Jennings. After arriving at Vicksburg, Mr. Criscoe wired Mr. Jennings as follows: "Vicksburg, Miss., 4—5—12. Epsie Jennings, Greenwood, Miss. I failed to see your brother Jackson. If you want the five families place transportation here *via* A. V. for forty party ticket. You pay for farming families only. No hoboes will appear. You pay no money except transportation until you get them. Wire me, *via* Postal, at once. J. L. Criscoe." Mr. Jennings replied promptly as follows: "Greenwood, Miss., May 6, q. J. L. Criscoe, Vicksburg, Miss. Griffith president bank pay tickets six families. Pay you twenty-five family on delivery. A. E. Jennings." This reply was not delivered at all.

It will be observed that Mr. Criscoe's telegram offered five families, and Mr. Jennings' reply informed Mr. Criscoe that the president of the bank would furnish money to pay the transportation for six families, and that Jennings would pay Criscoe twenty-five dollars for each family delivered to him. I interpret this telegram to mean that Jennings accepted the proposition to take the five families Criscoe had wired him about, and it also means, inferentially, that Jennings would take and pay for one more family, if Criscoe saw fit and was able to deliver the extra family. I do not think the two telegrams can be construed to mean that Criscoe made one proposition and Jennings accepted a different proposition. I take it that any business man would have acted on the telegram by forwarding the five families offered, and also the additional family, if he was able to deliver the additonal family.